**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GROVE CITY SURGERY CENTER, LLC, 1325 Stringtown Road Grove City, Ohio 43123 | ) ) ) ) | Civil Action No. 2:19-CV-4629 Judge |
| Plaintiff, | ) ) ) | Magistrate Judge |
| v. | ) ) | **JURY DEMAND ENDORSED** |
| SULLIVAN HEALTHCARE CONSULTING, LLC, 2655 Northwinds Parkway Alpharetta, Georgia 30009 | ) ) ) ) ) | **HEREON** |
| Defendant. | | |

## COMPLAINT

Plaintiff Grove City Surgery Center, LLC ("GCSC"), by and through counsel, for its

Complaint against Defendant Sullivan Healthcare Consulting, LLC ("Sullivan"), alleges as

follows:

## NATURE OF ACTION

1.     This action arises out of Sullivan's material breaches of a Consulting

Agreement between the parties and Sullivan's multiple misrepresentations regarding when a

new ambulatory surgery center in Grove City, Ohio (the "Surgery Center") would be ready

to open.  GCSC contracted with Sullivan to provide consulting assistance and support

during the construction, opening, and first year of operations of the Surgery Center.  GCSC

has sustained substantial damages, including lost profits, as a result of Sullivan's material

breaches and misrepresentations.  Sullivan caused these damages by (1) failing to ensure an

on-time opening of the Surgery Center as promised and represented and (2) providing

services that were not workman-like and fell well below industry standards.

## PARTIES

2.      GCSC is a limited liability company organized under the laws of Ohio with its principal place of business in Grove City, Ohio.  GCSC is managed by a Board of Managers consisting of six managers (the "Board").  The Surgery Center operated by GCSC offers a variety of outpatient surgery services, including but not limited to orthopedic surgery, plastic and reconstructive surgery, podiatric surgery, spine surgery, colon and rectal surgery, gastroenterological surgery, general surgery, gynecological surgery, and urological surgery.

3.      Sullivan is a limited liability company organized under the laws of Georgia with its principal place of business in Alpharetta, Georgia.  It is licensed to do business in Ohio.  Sullivan purports to have over 40 years of experience in healthcare consulting services and implementation, including developing and managing ambulatory surgery centers like the Surgery Center.  It also purports to have completed projects in every state in the United States and in multiple foreign countries.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy, excluding interest and costs, exceeds seventy-five thousand dollars ($75,000), and the parties are citizens of different states with GCSC being a citizen of Ohio and Sullivan being a citizen of Georgia.  None of GCSC's members are residents or citizens of Georgia, and none of Sullivan's members are residents or citizens of Ohio.

5.      This Court has personal jurisdiction over Sullivan under Ohio Revised Code § 2307.382 because, among other things, Sullivan transacts business in Ohio, contracted to supply services in Ohio, and has caused tortious injury in Ohio by its acts in and outside of

2

Ohio.  Sullivan also agreed in Section 20 of the Consulting Agreement that the sole and exclusive venue for any claims arising out of the Consulting Agreement shall be a court of competent jurisdiction in Franklin County, Ohio.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and Local Rule 82.1 because a substantial part of the events giving rise to GCSC's claims arose in Franklin County, Ohio, and Sullivan agreed in Section 20 of the Consulting Agreement that the sole and exclusive venue for any claims arising out of the Consulting Agreement shall be a court of competent jurisdiction in Franklin County, Ohio.

## FACTUAL BACKGROUND

**GCSC Executed A Consulting Agreement**
**With Sullivan For A New Surgery Center**

7. GCSC sought to build and operate the Surgery Center next to the OhioHealth Grove City Methodist Hospital.  In or around 2016, GCSC sought an expert consultant that could provide consulting services needed for the opening and operation of the Surgery Center.  Sullivan represented to GCSC that it had the skills and experience needed to provide consulting assistance and support during the construction, opening, and first year of operations of the Surgery Center (the "Project").

8. On or about September 20, 2016, Sullivan made a presentation regarding its capability to successfully complete the Project on time.  Sullivan represented that it had wide industry knowledge and extensive experience with surgery centers and best practices. Sullivan also represented that it could ensure that the Project was "done the right way the first time."

9. More specifically, Sullivan represented that it could provide facility design support; work with architects to ensure a well-designed facility that supports efficient

operations; provide operational structure; provide policies and procedures; ensure regulatory approval; recruit, train, and educate staff; set up and implement a patient scheduling system; provide equipment and supply acquisition and set up; and implement a billing system before the Surgery Center opened. Sullivan also represented that it could ensure a smooth start-up and ramp-up phase. It also represented that it could provide content matter experts on site in operations, scheduling, business operations, and regulatory standards.

10.     Sullivan also represented that it could provide support during the first year of operations of the Surgery Center.

11.     Sullivan also represented that the cost of its services would range from $580,000 to $850,000 for the pre-opening and first year of operations of the Surgery Center.

12.     Sullivan followed up its presentation with a proposal dated September 22, 2106. In the proposal, Sullivan reiterated its representations about its capabilities and the services it would provide. Sullivan also represented that it would prepare "a detailed work plan with clear milestones" and that this plan would be reviewed with the Board each month to ensure that the Project was progressing on time.

13.     Based on Sullivan's representations, GCSC agreed to enter into a Consulting Agreement with Sullivan on or about October 20, 2016. A true and accurate copy of the Consulting Agreement is attached as Exhibit 1 and incorporated herein by reference.

14.     Pursuant to Section 1 of the Consulting Agreement, Sullivan agreed to provide the "Services" listed in Exhibit A to the Consulting Agreement. Sullivan represented that it had the qualifications and experience needed to provide the Services and that all the Services would be provided in a workman-like manner and in accordance with

industry standards.  The Services addressed the pre-opening of the Surgery Center, the opening and first-year of operations, project team, and project start-up.

15.     Sullivan acknowledged and agreed in Section 1.4 of the Consulting Agreement that "Time is of the Essence" for the Project.  Sullivan represented and warranted in Section 1.4 of the Consulting Agreement that its Services "will result in the timely completion of the Project," and agreed that its "failure to meet this deadline shall constitute a material breach" of the Consulting Agreement.

16.     Section A.1 in Exhibit A addressed Sullivan's obligations to ensure an on-time opening.  Pursuant to Section A.1, Sullivan agreed to "[e]nsure accreditation/certifications, licensures, and all other approvals required are obtained for timely opening of the Surgery Center."

17.     Section A.2 in Exhibit A also addressed in part Sullivan's obligations to ensure an on-time opening.  Pursuant to Section A.2, Sullivan agreed to "[e]nsure on-time opening during the third quarter of 2017 and smooth startup and ramp-up phase."  Sullivan also agreed to "provide ongoing support by senior staff to ensure that milestones are met, governance models are in place, and quality assured."

18.     Section A.4 in Exhibit A also addressed Sullivan's obligations to ensure an on-time opening.  Pursuant to Section A.4, Sullivan agreed to have its project director "prepare a detailed work plan with clear milestones within the first two weeks on site.  This plan will be reviewed with the board initially and then monthly thereafter to ensure the Project is progressing on time."

19.     Pursuant to Section 2 of the Consulting Agreement, Sullivan could charge GCSC "only for the Services provided on site."

20.     Section 7 of the Consulting Agreement limits the recovery of certain types of damages but this limitation does not include damages arising from Sullivan's representations regarding the timely completion of the Project.

**Sullivan Materially Breached The Consulting Agreement**
**By Providing Services That Were Below Industry Standards**

21.     Sullivan materially breached the Consulting Agreement in many different ways.  Sullivan materially breached the Consulting Agreement by failing to ensure an on-time opening of the Surgery Center as promised and represented multiple times from October 2016 through November 2017 and thereafter.

22.     Sullivan also materially breached the Consulting Agreement by failing to provide continuing support during the Surgery Center's first year of operations.

23.     Sullivan also materially breached the Consulting Agreement by recommending equipment to GCSC that was overpriced or unnecessary for the Surgery Center.  Even after accounting for GCSC's ability to repurpose some of the overpriced and unnecessary equipment recommended by Sullivan, GCSC is still saddled with equipment that was not needed and has not and is not being used by GCSC.

24.     Sullivan also materially breached the Consulting Agreement by recommending information technology systems, contracts, and service providers that were not needed or were not a good fit for the needs of the Surgery Center.  While GCSC has been able to cancel some of these contracts, it is still saddled with ongoing payments totaling thousands of dollars per month under multiple contracts from which it is receiving no benefit.

25.     Sullivan also materially breached the Consulting Agreement by failing to perform the Services listed in Exhibit A to the Consulting Agreement in a workman-like

manner in accordance with industry standards. Among many other examples, the Services provided by Sullivan fell substantially below industry standards in these material respects:

- Sullivan continually presented a Project timeline and plan to the Board that had inaccurate and unrealistic milestones that Sullivan knew or should have known could not be met;

- Sullivan failed to properly manage the Project and ensure that the milestones and tasks that needed to be completed for an on-time opening were completed timely and competently;

- Sullivan relied on out-of-date standards to provide the Services relating to the pre-opening and opening of the Surgery Center;

- Sullivan recruited and hired staff that did not have the necessary experience for an ambulatory surgery center and also failed to adequately train and educate the staff;

- the policies and procedures provided by Sullivan were below industry standards and not ready in time to train the staff before the opening of the Surgery Center, and they required hours of editing and correcting by GCSC;

- the patient record templates provided by Sullivan were below industry standards and had to be edited and finalized by GCSC; and

- Sullivan failed to place content matter experts on site who could provide competent assistance with operations, scheduling, sterile processing, business operations, and regulatory standards.

**Sullivan's Material Breaches of the Consulting Agreement**
**Substantially Delayed the Opening of the Surgery Center**

26.     Throughout the Project, Sullivan represented that it would take six to eight weeks from the issuance of a Certificate of Occupancy ("COO") to the Surgery Center to when the Surgery Center could take its first case. Among the documents created by Sullivan regarding this timeline, Sullivan prepared and presented a "Key Decision Point Matrix" at the beginning of the Project that assumed a first case on November 1, 2017 after receipt of the COO on September 11, 2017.

27.     In March 2017, Sullivan represented to GCSC that the Surgery Center would be able to take its first case in December 2017.  Sullivan also represented to GCSC that the Surgery Center would be able to complete its first ten cases before the end of December 2017.  According to Sullivan's representations, the Surgery Center could take its first case between December 7, 2017 and December 12, 2017 if the COO was obtained on October 16, 2017, and the Surgery Center could take its first case between December 22, 2017 and December 28, 2017 if the COO was obtained on November 1, 2017.  Sullivan also presented a detailed work plan with clear milestones to achieve an on-time opening in December 2017.

28.     From March 2017 through October 2017, Sullivan continued to represent to GCSC that "[a]ll items are on track with no delays at this time," and that the Surgery Center would be able to take its first case by the end of December 2017.  The project director for Sullivan also presented detailed, updated timelines on the remaining tasks that needed to be completed through December 2017.

29.     Staff first reported for work at the Surgery Center on November 6, 2017 based on Sullivan's repeated representations that the Surgery Center would be able to take its first case by the end of December 2017.

30.     During the November 15, 2017 Board meeting, Sullivan notified the Board that the Surgery Center would not be ready to take its first case in December 2017.  Instead, Sullivan represented that the Surgery Center would be ready to take its first case by mid-January 2018.

31.     For the November 15, 2017 Board meeting, Sullivan prepared and presented a PowerPoint presentation with a work plan detailing clear milestones.  According to Sullivan's representations, the COO would be received on November 16, 2017, and the

Surgery Center would be able to take its first case eight weeks later, on January 15, 2018. Sullivan further represented that the Surgery Center would be able to complete its first ten cases by January 17, 2018.

32.   The general contractor for the construction of the Surgery Center completed the construction of the Surgery Center on or about November 15, 2017. Accordingly, GCSC should have received the COO for the Surgery Center on or about November 19, 2017.

33.   GCSC did not receive the COO on November 19, 2017 because Sullivan had not secured the delivery of required medical gases for the Surgery Center. Part of the requirement to obtain the COO was to have the medical gasses installed and verified by a third-party inspector. Because of the delay caused by Sullivan, GCSC did not receive the COO for the Surgery Center until a month later, on December 11, 2017.

34.   As of November 15, 2017, Sullivan had not arranged for the required medical gasses and had not secured phones or furniture for the Surgery Center. Moreover, Sullivan had failed to have most of the needed medical equipment delivered to the Surgery Center.

35.   On or about November 15, 2017, Sullivan arranged for a preliminary walk-through of the Surgery Center by surveyors for the Accreditation Association for Ambulatory Health Care ("AAAHC"). As part of that walk-through, Sullivan erroneously informed the surveyors that the Surgery Center was a Category 1 facility instead of a Category 2 facility. This misinformation led to comments and suggested corrective actions that were not needed but further delayed the opening of the Surgery Center as they were addressed.

36.     As of December 11, 2017, Sullivan failed to have phones or furniture in the Surgery Center, failed to have needed medical equipment in the Surgery Center, and failed to have functional security in the Security Center.

37.     As of January 19, 2018, the Surgery Center still did not have furniture and did not have the necessary pharmaceuticals as a result of Sullivan's failure to perform necessary tasks.

38.     As late as February 2018, there were numerous issues with the staff recruited and hired by Sullivan.  These issues included but were not limited to registered nurses with no experience in the post-anesthesia care unit ("PACU") who had not been provided needed training, a registered nurse with little experience starting IVs, insufficient training of registration personnel, and a lack of flexibility and back-up plans for staffing.  Sullivan also had failed to validate the skills of the operating room team.  In short, the staff was not sufficiently prepared by Sullivan to be surveyed by the Ohio Department of Health ("ODH") or the AAAHC, and the opening of the Surgery Center was further delayed.

39.     In or around February 2018, Sullivan's project director stopped providing on-site Services for the Project.

40.     Sullivan also was not familiar with the Medicare Provider Enrollment, Chain, and Ownership System ("PECOS"), and instead submitted information necessary for GCSC's enrollment as a Medicare provider via paper documents.  Sullivan also was not familiar with the sequencing of events that would allow for the processing of the Medicare enrollment application without rejection and further delay.  As a result, the opening of the Surgery Center was further delayed.

41.     Contrary to Sullivan's past representations and contractual commitments, the Surgery Center was not ready to take its first case until April 6, 2018—almost five months after GCSC should have received the COO.  This delay was caused by Sullivan's failure to perform as required under the Consulting Agreement.  Further, the Surgery Center would not have even opened in April 2018 if others had not jumped in and committed substantial resources to make sure everything that needed to be done was completed, including but not limited to the training of staff.

42.     Because the Surgery Center did not open on time, staff was not needed from November 2017 through at least January 2018.  Accordingly, GCSC incurred unnecessary employee expenses during those months.  GCSC also started to incur fixed monthly rent and insurance expenses in December 2017 even though GCSC was not earning revenue from the Surgery Center.

**GCSC Agreed To Hire An Interim Director Of Nursing Provided By Sullivan**
**Under The Consulting Agreement Based On Misrepresentations Made By Sullivan**

43.     In July 2017, Sullivan represented to the Board that pursuant to the Consulting Agreement it was actively recruiting for the following key positions: Administrator; Business Manager; Director of Nursing; and Material Manager.

44.     In September 2017, Sullivan represented to the Board that it had posted the Business Manager and Director of Nursing positions on the internet.

45.     In October 2017, Sullivan represented to the Board that it had no candidates for the Director of Nursing position.

46.     As of the November 15, 2017 Board meeting, Sullivan still had failed to fulfill the Director of Nursing position.

47. After Sullivan failed to ensure the on-time opening of the Surgery Center, Sullivan represented to GCSC in January 2018 that the Surgery Center needed to have a temporary Director of Nursing ("DON") on staff because a dedicated DON was required by the ODH and the AAAHC in connection with the licensing and accreditation of an ambulatory surgery center. GCSC subsequently learned that it could have obtained proper licensing and accreditation without having a separate person fulfill the role of the DON.

48. Based on Sullivan's representations, the Board approved the hiring of a temporary DON at its January 16, 2018 Board meeting. The Board did not approve the execution of a separate contract for the temporary DON position and understood that its approval would constitute an addendum to the original Consulting Agreement. Moreover, Sullivan did not present a contract to the Board for its review and approval.

49. Even though the Board did not approve the execution of a separate contract, Sullivan requested the Surgery Center's Administrator to sign a Proposal for Interim Director of Nursing for Grove City Surgery Center ("Interim DON Proposal") it prepared so that Sullivan could provide the temporary DON. Sullivan subsequently referred to the Interim DON Proposal as a "contract addendum" to the original implementation contract. The Administrator signed the Interim DON Proposal so that Sullivan would begin providing the temporary DON services.

50. The temporary DON provided by Sullivan was already a consultant on the Project and had provided consulting services under the Consulting Agreement from at least January 2017 through January 2018. After January 2018, the temporary DON consultant continued to provide the same types of services she was already providing under the Consulting Agreement.

51.     The temporary DON consultant failed to provide the additional tasks listed in the Interim DON Proposal.  For example, the temporary DON consultant was supposed to be in charge of the entire Surgery Center, but she was rarely out on the floor and was not in tune with what was happening in the Surgery Center.  She did not oversee daily operations and spent most of her time away from direct patient care.  Instead, she completed paperwork that was supposed to be done as part of the Services Sullivan was purportedly providing under the Consulting Agreement.

52.     Sullivan has now taken the position that the Interim DON Proposal signed by the Administrator constitutes an entirely separate enforceable contract between Sullivan and GCSC and that it was not a part of the Consulting Agreement.  GCSC never intended to enter into a separate contract with Sullivan, and the Administrator who signed the Interim DON Proposal was not authorized to enter into such a contract.

**GCSC Has Paid Sullivan More Than Sullivan's Estimated Cost Of The Project
But Sullivan Nonetheless Continues To Seek Payment**

53.     Sullivan substantially exceeded its original cost estimate even though it failed to provide continuing support during the Surgery Center's first year of operations as promised.  Nonetheless, GCSC has paid Sullivan more than Sullivan's estimated cost of the Project.

54.     On or about August 6, 2018, Sullivan sent a letter seeking payment for services it claims to have provided under the Consulting Agreement, including for the temporary DON consultant and another consultant that Sullivan had to retain because Sullivan was substantially behind its promised schedule.  The tasks performed by this additional consultant should have been completed months earlier and should have been covered by the amounts GCSC had already paid to Sullivan.  Indeed, this consultant

commented to GCSC that she had never seen a project as far behind schedule or as disorganized as this Project.

55.     Sullivan continues to seek payment even though GCSC has already paid Sullivan more than the estimated cost of the Project and Sullivan has materially breached the Consulting Agreement by failing to ensure an on-time opening of the Surgery Center, by providing services that were below industry standards, and by providing a temporary DON consultant that failed to perform all tasks listed in the Interim DON Proposal.

56.     Sullivan also seeks payment even though its president had represented to two Board members on or about March 21, 2018 that GCSC would not be required to pay for any consultant with whom GCSC was not satisfied.

57.     Sullivan also seeks payment for Services that, upon information and belief, were duplicative and performed remotely in breach of Section 2 of the Consulting Agreement.

58.     GCSC should not have to pay the amounts sought by Sullivan for all the reasons discussed herein.

## COUNT I
### Breach of Contract

59.     GCSC incorporates the allegations set forth above as if fully rewritten herein.

60.     The Consulting Agreement is a valid and enforceable contract.

61.     GCSC substantially performed its obligations under the Consulting Agreement.

62.     Sullivan materially breached the Consulting Agreement in many different ways.

63.     Sullivan materially breached the Consulting Agreement because it failed to ensure an on-time opening of the Surgery Center.

64.     Sullivan materially breached the Consulting Agreement because it failed to provide the Services in a workman-like manner in accordance with industry standards.

65.     Sullivan materially breached the Consulting Agreement because the consultant it provided to fill the role of the interim DON position did not actually provide the services Sullivan promised to provide.

66.     Among many other examples, Sullivan also materially breached the Consulting Agreement because:

- Sullivan continually presented a Project timeline and plan to the Board that had inaccurate and unrealistic milestones that Sullivan knew or should have known could not be met;

- Sullivan failed to properly manage the Project and ensure that the milestones and tasks that needed to be completed for an on-time opening were completed timely and competently;

- Sullivan relied on out-of-date standards to provide the Services relating to the pre-opening and opening of the Surgery Center;

- Sullivan recruited and hired staff that did not have the necessary experience for an ambulatory surgery center and also failed to adequately train and educate the staff;

- the policies and procedures provided by Sullivan were below industry standards and not ready in time to train the staff before the opening of the Surgery Center, and they required hours of editing and correcting by GCSC;

- the patient record templates provided by Sullivan were below industry standards and had to be edited and finalized by GCSC;

- Sullivan failed to place content matter experts on site who could provide competent assistant with operations, scheduling, sterile processing, business operations, and regulatory standards;

- Sullivan recommended equipment to GCSC that was overpriced or unnecessary for the Surgery Center; and

- Sullivan recommended information technology systems, contracts, and service providers that were not needed or were not a good fit for the needs of the Surgery Center.

67.     As a direct and proximate result of Sullivan's material breaches of the Consulting Agreement, GCSC has suffered, and will continue to suffer, damages in excess of $75,000 in an amount to be determined at trial.

## COUNT II
## Promissory Estoppel

68.     GCSC incorporates the allegations set forth above as if fully rewritten herein.

69.     After the parties entered into the Consulting Agreement, Sullivan made multiple promises and representations to GCSC that the Surgery Center would be ready to take its first case six to eight weeks after the COO was obtained.  Sullivan also made multiple promises and representations to GCSC that the Surgery Center would be ready to take its first case before the end of December 2017.

70.     As late as the November 15, 2017 Board meeting, Sullivan promised and represented that the Surgery Center would be ready to take its first case by January 15, 2018, and its first ten cases by January 17, 2018.

71.     On or about March 21, 2018, Sullivan's president promised and represented to two Board members that GCSC would not be required to pay for any consultant with whom GCSC was not satisfied.

72.     Sullivan should reasonably and foreseeably have expected GCSC to rely on Sullivan's promises and representations.

73. GCSC reasonably and foreseeably relied on Sullivan's promises and representations. Among other things, GCSC had staff report for work at the Surgery Center as early as November 6, 2017, and GCSC refrained from terminating Sullivan during the Project.

74. Sullivan breached its promises when it failed to ensure that the Surgery Center would be ready to take its first case by the end of December 2017. Sullivan further breached its promises because it failed to ensure that the Surgery Center opened within six to eight weeks after the COO was issued. Sullivan further breached its promises because the Surgery Center did not open until April 6, 2018. Sullivan further breached its promises by seeking payment for services provided by consultants with whom GCSC was not satisfied.

75. As an alternative theory to GCSC's breach of contract claim against Sullivan, injustice can be avoided only be enforcing Sullivan's aforementioned promises.

76. As a direct and proximate result of GCSC's reasonable reliance on Sullivan's promises and representations, GCSC has suffered, and will continue to suffer, economic losses and damages in excess of $75,000 in an amount to be determined at trial.

## COUNT III
## Negligent Misrepresentation

77. GCSC incorporates the allegations set forth above as if fully rewritten herein.

78. On several occasions during the discussions and negotiations of the Consulting Agreement, and during the course of Sullivan's business relationship with GCSC in which Sullivan had a pecuniary interest, Sullivan supplied information and represented to GCSC that Sullivan could ensure an on-time opening of the Surgery Center and that the Surgery Center would be ready to take its first case six to eight weeks after the COO was obtained.

79.     Sullivan also supplied information and represented to GCSC during the Project that the Surgery Center would be ready to take its first case before the end of December 2017.

80.     As late as the November 15, 2017 Board meeting, Sullivan supplied information and represented to GCSC that the Surgery Center would be ready to take its first case by January 15, 2018, and its first ten cases by January 17, 2018.

81.     In January 2018, Sullivan represented to GCSC that the Surgery Center needed to have a temporary DON on staff because a dedicated DON was required by the ODH and the AAAHC in connection with the licensing and accreditation of an ambulatory surgery center.

82.     Sullivan supplied the information and made the representations to GCSC before the parties entered into the Consulting Agreement to persuade GCSC to use Sullivan as a consultant and then during the course of the Project to persuade GCSC to continue using Sullivan as a consultant.  Sullivan benefitted from GCSC's decision to use Sullivan and to continue using Sullivan as a consultant during the Project.

83.     The representations made by Sullivan to GCSC, as well as other information supplied by Sullivan to GCSC, were false.

84.     Sullivan knew or should have known that the information it supplied to GCSC and the representations it made to GCSC were false.  At the very least, Sullivan failed to exercise reasonable care or competence in communicating the information and making the representations to GCSC.

85.     GCSC reasonably and justifiably relied on the information supplied and representations made by Sullivan, and in reliance thereon, entered into the Consulting

Agreement, followed Sullivan's recommendations, had staff report for work at the Surgery

Center as early as November 6, 2017, approved the hiring of a temporary DON consultant,

continued to use Sullivan as a consultant during the Project, and refrained from terminating

Sullivan as the consultant during the Project.

86. As a direct and proximate result of Sullivan's negligent misrepresentations,

GCSC has suffered, and will continue to suffer, damages in excess of $75,000 in an amount

to be determined at trial.

**COUNT IV**
**Declaratory Judgment**

87. GCSC incorporates the allegations set forth above as if fully rewritten herein.

88. Sullivan maintains that GCSC owes it money for services allegedly provided

under the Consulting Agreement and the Interim DON Proposal. GCSC disputes that it

owes Sullivan any money, including for all the reasons discussed above.

89. Sullivan also maintains that the Interim DON Proposal is a separately

enforceable contract and that GCSC is subject to an arbitration provision in it. GCSC

disputes that the GCSC is a separately enforceable contract and that even if it is, Sullivan

waived the arbitration provision by filing a lawsuit in state court in Georgia that was

removed by GCSC to federal court before Sullivan dismissed that lawsuit.

90. There is a justiciable controversy between GCSC and Sullivan concerning

these issues and their rights under the Consulting Agreement.

91. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., GCSC

requests that the Court declare that GCSC does not owe Sullivan any additional money for

any services Sullivan allegedly has provided to GCSC, including for the Interim DON

position; that the Interim DON Proposal is not a contract that is valid and separately

19

enforceable from the Consulting Agreement and that the Consulting Agreement applies instead; and that Sullivan has waived the arbitration provision in the Interim DON Proposal to the extent such provision is even enforceable.

## PRAYER FOR RELIEF

**WHEREFORE**, GCSC demands judgment in its favor and against Sullivan as follows:

A. compensatory damages in excess of $75,000;

B. an Order declaring that GCSC does not owe Sullivan any additional money for any services Sullivan allegedly has provided to GCSC, including for the temporary DON position; that the Interim DON Proposal is not a contract that is separately enforceable from the Consulting Agreement; and that Sullivan has waived the arbitration provision in the Interim DON Proposal to the extent such provision is even enforceable;

C. an award of costs and attorneys' fees incurred herein; and

D. any further relief that the Court may deem just and equitable.

Respectfully submitted,

*/s/ Jay A. Yurkiw*
Jay A. Yurkiw, Trial Attorney (0068143)
Sara C. Schiavone (0096657)
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215-6194
Telephone: (614) 227-2000
Facsimile: (614) 227-2100
E-mail: jyurkiw@porterwright.com
          sschiavone@porterwright.com

*Attorneys for Plaintiff Grove City Surgery Center, LLC*

## DEMAND FOR JURY TRIAL

GCSC hereby requests a trial by jury on all issues triable to a jury.

*/s/ Jay A. Yurkiw*
Jay A. Yurkiw, Trial Attorney (0068143)
Sara C. Schiavone (0096657)
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215-6194
Telephone:  (614) 227-2000
Facsimile:   (614) 227-2100
E-mail:  jyurkiw@porterwright.com
          sschiavone@porterwright.com

*Attorneys for Plaintiff Grove City Surgery Center, LLC*

12829286v1